W. Britton Smith, Jr., Smith Tomberlin & Ruff, Charlotte, N.C., Thomas J. Manley, J.B. Kelly, Hunton & Williams, Raleigh, N.C., for defendants.

George BELEOS, Plaintiff,

v.

**COMMERCIAL CREDIT COMPANY and American Credit Indemnity Company, Defendants.**

**No. C–C–87–430–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 16, 1990.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Plaintiff's New Arguments and Exhibits, filed December 11, 1989, and other related matters. The issues now before the Court concern the equitable relief that the Court will award Plaintiff because of Defendants' discrimination against him on account of his age. The parties have been very diligent, almost to the point of exhaustion, in submitting documents and discovery material to the Court and informing the Court of the parties' respective positions.

Since the trial of this matter, the Court has devoted innumerable hours to this matter in an attempt to put Plaintiff in his rightful place. Now that the parties have presented the Court with all the information requested by the Court, the Court must resolve the disputed issues.

First, on December 11, 1989, Plaintiff filed a Motion for Reconsideration, request-

ing the Court to reconsider its finding that Defendants must offer Plaintiff a position as an agent in Atlanta, Georgia. This is not the first of Plaintiff's efforts to have the Court reconsider its previous finding. Having carefully reviewed this matter, the Court still, and again, is convinced that Atlanta, Georgia is Plaintiff's rightful place for employment with Defendants. It is time for Plaintiff to accept the fact that if he is going to work for Defendants, Atlanta is the location that this Court has selected. In fashioning this equitable relief, the Court is attempting to keep Plaintiff in the southeastern United States, so that Plaintiff can be near the place that he previously lived and established friendships. The Court, consequently, will grant Plaintiff's Motion for Reconsideration, but will not amend its Order in this regard.

Concerning another matter preliminary to a resolution of the substantive pending matters, Defendants on December 20, 1989, filed a Motion to Strike Plaintiff's Reply, which Plaintiff filed on December 18, 1989, in reply to Defendants' Response. Although this Court's November 17, 1989 Order specifically did not grant Plaintiff the opportunity to file a reply to Defendants' Response, this Court's Order specifically did not prohibit Plaintiff from filing a reply. The Court recognizes that Defendants essentially are attempting to protect their interests. During the entire pendency of this action, however, the parties have deluged this Court with submissions and documents. The Court is of the opinion that one additional submission will not tip the balance in one party's favor. The Court believes, instead, that it is fully capable of segregating the wheat from the chaff, if that action is necessary. The Court, consequently, will deny Defendants' Motion.

The Court now will consider, and dispose of, the substantive issues regarding the appropriate equitable relief to award Plaintiff. The Court, first, will consider the appropriate salary that Defendants should pay Plaintiff. Having reviewed the arguments and exhibits of the parties, the Court believes for primarily two reasons that Defendants should pay Plaintiff an annual salary of $45,150. First, both Plaintiff and Defendants agree that an annual salary of $43,000 is a good approximation of Plaintiff's projected salary for 1989. The Court, however, believes that to account for inflation, the $43,000 amount should be increased by five (5) percent. Thus, the multiplication of $43,000 by 105% yields a product of $45,150. Secondly, Defendants recently have offered Plaintiff a job in Atlanta with a salary of $45,000. The Court believes that because the $45,150 approximates Defendants' recent offer of $45,000, $45,150 is an adequate, reasonable, and equitable salary for Plaintiff. The Court simply notes that both of these figures far exceed Plaintiff's annual salary of $39,912 as a Bank Broker Representative (BBR) at the time of his discharge. For both of these reasons, the Court concludes that if Plaintiff becomes employed by Defendants as a sales agent, Defendants shall pay Plaintiff an annual salary of $45,150.

The Court next will consider the appropriate length of time that Defendants should pay Plaintiff an annual salary. The Court believes, and the parties concede, that Defendants should pay Plaintiff an annual salary for a period of two years. After the expiration of the two-year period, Defendants shall treat Plaintiff as they treat all other sales agents and shall compensate Plaintiff on a commission-of-sales basis.

The Court, however, will require Defendants to pay the ordered salary provided that Plaintiff performs satisfactorily in his new position. The Court recognizes that in determining whether Plaintiff has performed satisfactorily, Defendants subjectively will evaluate Plaintiff's performance. The Court, however, believes that since the jury determined that Defendants had discriminated against Plaintiff on account of age, Defendants have attempted in good faith to resolve this matter. The Court has no reason at this point to doubt that Defendants will not continue to act in good faith.

The Court now will consider whether to require Defendants to give Plaintiff an existing book of business or existing customers. Plaintiff contends that although no evidence exists whether Plaintiff would

have inherited an existing book of business, two of five other persons becoming agents have received existing books of business. Plaintiff argues that because Plaintiff will not inherit an existing book of business, Defendants should pay Plaintiff the average commission earned by the other agents from their existing books of business. Defendants expectedly oppose this proposed resolution.

The Court believes that Plaintiff is not entitled to inherit an existing book of business and is not entitled to the receipt of compensation equivalent to other agents' average commissions. First, the Court believes that agents inheriting an existing book of business received an existing book of business only because an available agent's position with an existing book of business existed when the BBR became a sales agent. Second, the Court believes that Plaintiff's theory for a resolution of this issue is based merely on speculation and conjecture. Plaintiff attempts to have the Court award Plaintiff additional compensation based upon the job performance of other persons. The Court refuses to make this type of award primarily for three reasons. The Court is of the opinion that no one is able to predict how Plaintiff will perform on the job as a sales agent and that any prediction of Plaintiff's job performance will be based on mere speculation. The Court believes, further, that it is completely inappropriate to award Plaintiff compensation and, thus, somehow reward Plaintiff for the commendable job performance of others. The Court believes, furthermore, that if the Court now would award Plaintiff such additional compensation, Plaintiff might have less incentive to strive for higher goals while an agent. For all of these reasons, the Court will neither require Defendants to provide Plaintiff with an existing book of business nor require Defendants somehow to compensate Plaintiff for not providing Plaintiff with an existing book of business.

The Court next will consider the appropriate period for back pay calculations. Defendants argue that because Plaintiff sought a stay of this Court's June 23, 1989 Order and has continued to litigate the equitable relief awarded by the Court, the Court should end the period for awarding back pay on July 10, 1989, which is the date on which the Court stayed its June 23, 1989 Order. Defendants assert essentially that the Court should not allow Plaintiff to profit from his own delays. Defendants argue, alternatively, that the back pay period should be tolled as of October 25, 1989, which is the date upon which Defendants offered Plaintiff a position in Atlanta, Georgia as a sales agent. Plaintiff, however, responds that because the terms of Plaintiff's reinstatement opportunity are uncertain, back pay is appropriate until Plaintiff either accepts or rejects the reinstatement position.

The Court believes that because the Court must resolve disputed terms of Plaintiff's reinstatement, as evidenced by the necessity of this Order, the terms of Plaintiff's reinstatement position as a sales agent in Atlanta, Georgia have not been sufficiently specific. This lack of specificity applies to both the Court-ordered reinstatement and the offer of employment made by Defendants on October 25, 1989. The parties should not infer, however, that Defendants have not acted in good faith. It appears to the Court that the acquisition affecting Defendants has been a major complicating factor in this lack of specificity in the terms of Plaintiff's reinstatement position. Plaintiff, nevertheless, should not be penalized by not being awarded back pay for the time that the parties and the Court have needed to make more specific the terms of the equitable relief. The Court concludes, consequently, that equity ordinarily would require Plaintiff to be awarded back pay from the date of the verdict until Plaintiff either accepts or rejects Defendants' offer of reinstatement.

The Court, however, will end the back-pay period with this Order for several reasons. The Court believes that substantial delay in the final disposition of Plaintiff's equitable relief already has resulted from Plaintiff's Rule 59 Motion. The Court is of the opinion that any further delay in the entry of a judgment regarding the equitable relief to allow Plaintiff to file addi-

tional affidavits regarding his recent income and expenses would not benefit the interests of justice. Moreover, the Court believes that any further delay to allow Plaintiff to file an additional affidavits regarding his recent income and expenses would be fruitless and would not benefit the interests of justice. To date, Plaintiff has demonstrated a somewhat relaxed attitude regarding record keeping and has failed previously to file more specific accountings regarding his income and expenses. The Court believes, therefore, that Plaintiff should not be allowed to profit from any further delay. Furthermore, it appears from Plaintiff's most recent submission that Plaintiff intends immediately to respond to Defendants' offer of reinstatement.

The Court also must consider Plaintiff's request regarding fringe benefits, including vacation days, sick leave, interim credits for pension and social security contributions, and other lost fringe benefits. Plaintiff claims that he is entitled to either compensation for these lost benefits or credit upon his reinstatement with Defendants. In the June 23, 1989 Order, the Court awarded Plaintiff a credit of fifty-nine (59) days of vacation, two hundred twenty-one (221) sick days, and pension credits for the years 1987 and 1988 and for the first two months of 1989. Defendants now request the Court to reconsider these various awards and argue that Plaintiff's own Trial Exhibit 22 containing Plaintiff's back pay calculations included amounts for these fringe benefits from the date that Defendants discharged Plaintiff until the date of trial.

In light of the parties' arguments, the Court carefully has reconsidered its previous awards regarding vacation days, sick leave, and pension credit. Having reviewed the parties' contentions and the exhibits, the Court agrees with Defendants. Plaintiff's own Trial Exhibit 22 containing Plaintiff's back pay calculations includes an amount for fringe benefits not received by Plaintiff from the date of his discharge until the trial. Plaintiff has valued the fringe benefit package offered by Defendants to be worth $12,230 annually. In calculating the total amount of fringe benefits due him, Plaintiff included the value of the fringe benefit package from the date of his discharge until the date of trial. The package of fringe benefits afforded Plaintiff by Defendants includes, among other things, personal days off with pay, other paid leaves, and contributions to retirement plans, social security and personal investment plans.

In addition to Plaintiff's inclusion of a value for the fringe benefits package in his back pay calculations, the Court instructed the jury that if Plaintiff proved a case of discrimination, the jury should award Plaintiff damages, including the amount of lost salaries from the date of termination until the date of the jury verdict, increased by the value of pension benefits and other fringe benefits that would have accrued but for the discrimination, and decreased by other earnings and fringe benefits received by Plaintiff and by severance pay or other benefits paid to Plaintiff. Taking all of this into account, the Court concludes that in awarding Plaintiff damages in the amount of $87,178, the jury already has compensated Plaintiff for these fringe benefits included in the fringe benefit package up to the date of the jury verdict. The Court, therefore, will amend its June 23, 1989 Order to vacate the previous award of fifty-nine (59) days of accrued vacation, two hundred twenty-one (221) sick days and pension credits.

Because approximately eleven months have elapsed from the date of the jury verdict, the Court must consider the appropriate amount to increase the award of damages associated with the granting of equitable relief. The Court believes that Plaintiff should receive an amount of damages that includes lost salary, lost fringe benefits, lost tax savings, and lost interest on the sum total of these damages. Plaintiff's earnings received from other employment shall be deducted from this award.

The Court briefly shall explain the source of its figures or its calculations, as the Court believes necessary. First, regarding Plaintiff's salary for 1989, the Court has chosen the amount of $43,000

because both Plaintiff and Defendants agree that $43,000 is a good approximation of Plaintiff's annual salary for 1989. Second, the Court has chosen the amount of $12,230 to be the annual value of the complete fringe benefit package offered by Defendants to Plaintiff.[1] Third, in computing the lost tax savings, because Plaintiff in Trial Exhibit 22 used a contribution to the 401(k) Plan of ten percent of Plaintiff's lost salary and a tax rate of 20.67%, the Court will make similar selections. Fourth, the Court has selected the amount of Plaintiff's earnings from other employment on the following basis. According to Plaintiff's Affidavit, filed December 11, 1989, Plaintiff earned $13,502.94 from March 1, 1989 through December 11, 1989. Thus, for this forty-week period, Plaintiff averaged a weekly income of $337.50. The Court has used this average weekly income to calculate Plaintiff's earnings over the forty-seven week period from March 1989 through January 1990. Fifth, regarding expenses associated with other employment, Plaintiff's statements in Affidavits filed July 3, 1989, and December 11, 1989 are not consistent. In the July 3, 1989 Affidavit, Plaintiff claims expenses consistent with Plaintiff's Trial Exhibit 22, which estimate expenses equivalent to $500 per month. In the December 11, 1989 Affidavit, Plaintiff claims, upon belief without an accounting, that expenses have approximate $9,000 per year. The Court will allow expenses only at the rate of $500 per month because this is the amount that the jury apparently used in its determinations, as evidenced by Plaintiff's Trial Exhibit 22. Moreover, the Court believes that because Plaintiff has failed to provide the Court with a more accurate accounting of his expenses, Plaintiff should receive only his estimated expenses, rather than his unsupported belief regarding the amount of expenses incurred. In calculating the total amount due Plaintiff, the Court will attempt to track Plaintiff's Trial Exhibit 22 containing Plaintiff's Back Pay Calculations to the date of the trial.

## CALCULATIONS FOR ADDITIONAL DAMAGES AWARDED TO PLAINTIFF

I. LOST COMPENSATION, BENEFITS, AND TAX SAVINGS

    A. Lost Salary from 3–89 through 1–90:
       $43,000 annual salary over the eleven month period $(43,000 \times (^{11}/_{12}))$    $39,417

    B. Lost Fringe Benefits from 3–89 through 1–90:
       $12,230, which was the annual value of the complete fringe benefit package offered to Plaintiff by Defendants, for an eleven month period $(12,230 \times (^{11}/_{12}))$ .......................................... $11,211

    C. Lost Tax Savings from 3–89 through 1–90:
       $(39,417 \times .10) = \$3,941.7$ of 401(k) Wages $(3,941.7 \times .2067)$ ........ $   815

                                              $51,443

II. INCOME FROM OTHER EMPLOYMENT

    A. Gross Income from Date of Jury Verdict:
       For the forty-seven week period from March 1989 through January 1990, Plaintiff averaged a weekly income of $337.50. $(337.5 \times 47)$.   $15,863

    B. Expenses Associated with Finding a New Job and Unreimbursed Business Expenses:
       $(500 \times 11)$ .................................................. ($5,500)

    NET SETOFF FROM NEW EMPLOYMENT......................... $10,363
    INTERIM DAMAGES TO PLAINTIFF $(51,443 - 10,363)$.............. $41,080

---

**1.** Because the Court has vacated the previous award of vacation days, sick days, and pension credits contained in the June 23, 1989 Order, the Court finds it unnecessary to consider Plaintiff's other arguments regarding the manner in which Plaintiff should receive the fifty-nine day vacation credit, the two hundred twenty-one day credit for sick leave, and pension credits for 1987, 1988, and 1989.

III. INTEREST ON INTERIM DAMAGES
90–Day T–Bill Rate of 7.5%
(41,080 × .075) × ($^{11}/_{12}$) .............................................. $2,825

TOTAL DAMAGES TO BE AWARDED PLAINTIFF
(41,080 + 2,825) .............................................. $43,905

---

In summary of the Court's June 23, 1989 Order and this Order, Defendants shall offer Plaintiff a position in Atlanta, Georgia as a sales agent and shall pay Plaintiff an annual salary of $45,150 for a period of two years, provided that Plaintiff performs satisfactorily in his new position. Defendants shall credit Plaintiff with a hire date of December 2, 1954. Defendants, however, shall not be required to provide Plaintiff with an existing book of business and shall not be required to compensate Plaintiff in any way for not providing Plaintiff with an existing book of business. Additionally, Plaintiff is entitled to recover the sum of $43,905 from Defendants for damages, including lost salary, lost fringe benefits, and lost tax savings, accruing since the jury verdict in this case on March 3, 1989.

NOW, THEREFORE, IT IS ORDERED that:

1. Plaintiff's Motion to Reconsider, filed December 11, 1989, is hereby GRANTED, but the Court will not amend its finding that Atlanta is Plaintiff's rightful place of employment with Defendants.

2. Defendants' Motion to Strike, filed December 20, 1989, is hereby DENIED.

3. The Court's June 23, 1989 Order granting Plaintiff equitable relief is hereby amended to include the following terms of Plaintiff's Court-ordered reinstatement position with Defendants in Atlanta, Georgia: (a) Defendants shall pay Plaintiff an annual salary of $45,150; and (b) Defendants shall pay Plaintiff an annual salary for a period of two years, provided that Plaintiff performs satisfactorily in his new position.

4. The Court's June 23, 1989 Order granting Plaintiff equitable relief is hereby amended by deleting the provisions of Paragraphs (3)(b), (3)(c), (3)(d), and (4) on Page 6.

5. Defendants shall not be required to provide Plaintiff with an existing book of business and shall not be required to compensate Plaintiff in any way for not providing Plaintiff with an existing book of business.

6. Plaintiff is entitled to recover the sum of $43,905 from Defendants for damages accruing since the jury verdict in this case on March 3, 1989.

7. Within seven (7) days of the entry of this Order, Defendants shall provide Plaintiff with a written offer of employment, which shall have terms consistent with this Order and the terms of employment of all other ACIC sales agents, except to the extent that this Order commands otherwise.

8. Within five (5) days of the receipt of Defendants' written offer of employment, Plaintiff shall notify Defendants in writing of an acceptance or rejection of that written offer.

A Judgment consistent with this Order will be filed simultaneously with the filing of this Order.